**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br>PLAINTIFF,<br><br>v.<br><br>GRACIOUS, L.L.C. D/B/A GRACIOUS BAKERY + CAFÉ,<br>DEFENDANT. | CIVIL ACTION<br>NO. 24-418<br><br>JURY DEMAND |

## **COMPLAINT**

### NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act, Title I of the Americans with Disabilities Act, *as amended* ("ADA"), and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of sex (pregnancy) and disability and to provide appropriate relief to Cayla Cleaver ("Ms. Cleaver"). The Defendant, Gracious, LLC d/b/a Gracious Bakery + Café ("Defendant") discharged Ms. Cleaver because of sex (pregnancy) and disability, as set forth more specifically below.

### JURISDICTION & VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 451, § 1331, § 1337, § 1343, and § 1345. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(f)(1) and (3), Section 107(a) of the Americans with Disabilities Act, as amended ("ADA"), 42 U.S.C. § 12117(a), and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed in the State of Louisiana and, therefore, within the jurisdiction and venue of the United States District Court for the Eastern District of Louisiana pursuant to Title VII, 42 U.S.C. § 2000e-5(f)(3).

## PARTIES

3. Plaintiff, the U.S. Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and Title I of the ADA. The agency is expressly authorized to bring this action by Title VII, 42 U.S.C. § 2000e-5(f)(1) and by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant is and has been a corporation doing business in Louisiana.

5. At all relevant times, Defendant has been an employer engaged in an industry affecting commerce with at least fifteen employees under 42 U.S.C. § 12111(2), (5) and (7).

## ADMINISTRATIVE PROCEDURES

6. More than 30 days before the institution of this action, Ms. Cleaver filed a charge of discrimination ("charge") with the Commission alleging violations of Title VII and the ADA by Defendant.

7. On or about June 5, 2023, the Commission issued to Defendant a letter of determination ("determination") finding reasonable cause to believe that it violated Title VII and the ADA and inviting it to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

8. The Commission thereafter engaged in communications with Defendant to provide the opportunity to remedy the discriminatory practices described in the determination.

9. On or about August 25, 2023, the Commission issued Defendant a notice of conciliation failure, advising that the Commission was unable to secure a conciliation agreement acceptable to the Commission.

10. All conditions precedent to the institution of this action have been fulfilled.

FACTUAL ALLEGATIONS

11. At all relevant times, Defendant operated a bakery in New Orleans, Louisiana.

12. On or about December 19, 2020, Defendant hired Ms. Cleaver as a pastry cook.

13. At the time of her hiring, Ms. Cleaver had the necessary skills, experience and preliminary qualifications for the position.

14. At the time of her hiring and continuing to present, Defendant's employee handbook, under a section titled, "Health-Related Issues," stated: "Employees who become aware of any health-related issue, including pregnancy, should notify their supervisor of health status. This policy had been instituted to protect the employee."

15. At the time of hiring, Ms. Cleaver was pregnant, and Defendant was aware that she was pregnant.

16. On or about December 22, 2020, Ms. Cleaver reported for work at the bakery.

17. Defendant set aside Ms. Cleaver's first week for on-the-job training.

18. Ms. Cleaver timely reported for her shifts on December 22, 23, and 24, 2020 for training. On December 25, 2020, the bakery was closed.

19. Ms. Cleaver handled the position's requirements, completed assigned tasks, and satisfactorily performed the position's essential functions in the course of training on December 22, 23, and 24, 2020.

20. In the early morning hours of December 26, 2020, Ms. Cleaver was treated in a hospital emergency room for abdominal pain related to her pregnancy.

21. In advance of her shift scheduled for December 26, 2020, Ms. Cleaver notified her manager, Jessica Scott, by text message that she would be unable to come in for her shift due to the need for immediate medical treatment, which treatment Ms. Cleaver identified as connected to her pregnancy.

22. After receiving treatment, Ms. Cleaver texted Ms. Scott on December 26: "I was just released from the hospital and I have a doctor's note. [I]t states that I can return to work on the 28th [in two days] but if it's okay I'd like to return to work tomorrow. I can bring the documentation with me when I come in."

23. Ms. Scott responded, "I would like for you to return when the dr note states. So see you Monday [December 28] at 3:20am. Hope you and the baby get some extra extra rest. No worries."

24. The doctor's note stated that Ms. Cleaver may resume work on December 28, 2020, and the note did not set forth any restrictions or state that future medical issues were anticipated.

25. Ms. Cleaver timely reported to work on Monday, December 28, 2020, as instructed.

26. Ms. Cleaver handled the position's requirements, completed assigned tasks, and satisfactorily performed the position's essential functions on December 28, 2020.

27. After Ms. Cleaver completed her eight-hour shift, Ms. Scott and Defendant's owner-manager, Megan Forman, informed Ms. Cleaver that she was being discharged because they were concerned about her pregnancy.

28. Defendant discharged Ms. Cleaver on December 28, 2020.

29. As of the date of her discharge, Ms. Cleaver was qualified to perform all essential functions of her pastry cook position.

30. Subsequent to Defendant's decision to discharge Ms. Cleaver, Ms. Forman explained to Ms. Cleaver by text message:

> We know you have potential to do the job but a week into training you have had complications that have interfered with your ability to do your job. You and I discussed the possibility of this on the phone when we talked about the position. Unfortunately, you were out Saturday and Sunday – so there's a reliability issue that makes it difficult to continue with the training period. We do you wish you the best….

31. When Ms. Cleaver asked for clarification on the "reliability issue," Ms. Forman responded in text message:

> You weren't able to come to your shifts Saturday/Sunday… I'm by no means saying you yourself are not reliable – but the X factor of being pregnant creates unreliability.

32. In a subsequent text message, Ms. Forman added:

> Like we said in the office, everyone is different with pregnancy and reacts differently… we just need someone who we know will be available all assigned days for bake-off, And yes of course we would like to have you back after you have the baby.

33. The text message exchange contained in Exhibit A to this Complaint was furnished by the Defendant to the Commission during the investigation of the Charge.

34. Exhibit A is a true and correct copy of text messages exchanged between Ms. Forman and Ms. Cleaver.

## STATEMENT OF CLAIMS

35. Since at least December 2020, through the conduct alleged herein, Defendant has engaged in unlawful employment practices on the basis of sex (pregnancy) in violation of Title VII, 42 U.S.C. § 2000e-2(a).

36. Defendant discharged Ms. Cleaver because of pregnancy or related medical conditions in violation of Title VII.

37. Since at least December 2020, through the conduct alleged herein, Defendant has engaged in unlawful employment practices on the basis of disability in violation of 42 U.S.C. §§ 12112(a) and (b).

38. At all relevant times, Ms. Cleaver was a qualified individual with a disability as defined by the ADA.

39. Defendant discharged Ms. Cleaver because of a perceived impairment – complications from pregnancy – in violation of the ADA.

40. Since at least December 2020, through the conduct alleged herein, Defendant has engaged in unlawful employment practices in violation of 42 U.S.C. §12112(d)(4)(A) by making inquiries of employees as to whether they are individuals with a disability.

41. By mandating, through its Employee Handbook, that employees report "any health-related issue," Defendant subjected Ms. Cleaver and other employees to an unlawful disability-related inquiry, in violation of the ADA.

42. The effect of Defendant's unlawful employment practices complained of herein has been to deprive Ms. Cleaver of equal employment opportunities and otherwise adversely affect her status as an employee violation of Title VII and the ADA.

43. As a result of Defendant's unlawful actions, Ms. Cleaver suffered pecuniary, non-pecuniary, and other losses and damages.

44. The unlawful employment practices complained of above were intentional.

45. Defendant acted with malice and/or reckless indifference to the federally protected rights of Ms. Cleaver when it engaged in the unlawful employment practices complained of above.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant and its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from discriminating against applicants and employees on the basis of sex or disability, and to enjoin Defendant from engaging in unlawful medical inquiries.

B. Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities for pregnant women

and for qualified individuals with disabilities and that eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make Ms. Cleaver whole, by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement and/or front pay.

D. Order Defendant to post and keep posted the notices required by Title VII, 42 U.S.C. § 2000e-10(a) and the ADA, 42 U.S.C. § 12115 (incorporating 42 U.S.C. § 2000e-10(a)).

E. Order Defendant to make and preserve all records relevant to the determination of whether unlawful employment practices have been or are being committed, in accordance with Title VII, 42 U.S.C. § 2000e-8(c), and the ADA, 42 U.S.C. § 12117(a) (incorporating Title VII, 42 U.S.C. § 2000e-8(c)).

F. Order Defendant to make Ms. Cleaver whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above in amounts to be determined at trial.

G. Order Defendant to make Ms. Cleaver whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including emotional pain and

suffering, inconvenience, and humiliation, in amounts to be determined at trial.

H. Order Defendant to pay punitive damages for its malicious and/or reckless conduct, as described above, in amounts to be determined at trial.

I. Grant such further relief as the Court deems necessary and proper in the public interest.

J. Award the Commission its costs of this action.

JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by this Complaint that are triable to a jury.

Respectfully submitted,

U.S. Equal Employment Opportunity Commission

**Karla Gilbride**
General Counsel

**Christopher Lage**
Deputy General Counsel

**Rudy L. Sustaita**
Regional Attorney

**Gregory T. Juge**
Assistant Regional Attorney

/s/ Peter Theis
**Peter Theis**
Senior Trial Attorney

U.S. Equal Employment Opportunity Commission
New Orleans Field Office
500 Poydras Street, Suite 809
New Orleans, LA 70130
Phone: (504) 635-2548
Louisiana Bar No. 34786

**Scott D. Wilson**
Senior Trial Attorney
U.S. Equal Employment Opportunity Commission
New Orleans Field Office
500 Poydras Street, Suite 809
New Orleans, LA 70130
Phone: (504) 635-2569
Email: scott.wilson@eeoc.gov
Louisiana Bar No. 19835

**Jacqueline C. Barber**
Trial Attorney
U.S. Equal Employment Opportunity Commission
Hale Boggs Federal Building
500 Poydras Street, Suite 809
New Orleans, Louisiana 70130
Phone: (504) 635-2572
Email: jacqueline.barber@eeoc.gov
Louisiana Bar No. 36362

COUNSEL FOR U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**REGISTERED AGENT FOR SERVICE OF PROCESS:**

ARTHUR S. MANN, III
3366 LAFAYETTE STREET, SUITE 301
NEW ORLEANS, LA 70130.

# EXHIBIT A




Mon, Dec 28, 2:04 PM

Hi Cayla -
That call was unexpected. I thought we were clear when we all sat down and talked, but to be clear again- we know you have potential to do the job but a week into training you have had complications that have interfered with your ability to do the job. You and I discussed the possibility of this on the phone when we talked about the position. Unfortunately, you were out Saturday and Sunday - so there's a reliability issue that makes it difficult to continue with the training period.
We do wish you the best. I don't think you need a document from me- you have worked at other places way longer that could attest to your work skill.
Let me know when you will bring in the clicker and we can cut you a check.



iMessage





Megan,
When we spoke my reliability was never mentioned. Only that I you all were worried regarding me working while pregnant. You also stated that my termination had nothing to do with my performance and you'd love to have me back after I give birth. Is this no longer the case?

Cayla to be honest I'm very confused about your call and this above text. You seem angry now, which was not what I saw at all in the office.

Oh no I am sorry if it appears to be that way. I am asking for clarification because you said I could keep in touch after birth regarding re-employment so I am asking if that offer still stands . I am confused now because my reliability wasn't mentioned and now it is.

You weren't able to come to



iMessage





You weren't able to come to your shifts Saturday/Sunday... I'm by no means saying you yourself are not reliable- but the X factor of being pregnant creates unreliability

Also if I'm not able to find a position I'm sure any government assistance program will ask about my last employer and I'd have to put gracious down so that's why I'd need documents on.

Okay! I will be on the look out for the clicker and bring that as soon as I can .

Ok for it.
Like we said in the office, everyone is different with pregnancy and reacts differently... we just need someone who we know will be available all assigned days for bake-off,
And yes of course we would like





iMessage






government assistance program will ask about my last employer and I'd have to put gracious down so that's why I'd need documents on.

Okay! I will be on the look out for the clicker and bring that as soon as I can .

Ok for it.
Like we said in the office, everyone is different with pregnancy and reacts differently... we just need someone who we know will be available all assigned days for bake-off,
And yes of course we would like to have you back after you have the baby.

Thank you for the opportunity I do appreciate it , and I will be in touch.

Sounds good

Delivered





iMessage

